UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,            Case No. 3:24-cr-87

        Plaintiff,

   v.                                     MEMORANDUM OPINION
                                          AND ORDER

Darnell Peppers,

        Defendant.

## I. INTRODUCTION

Before me is Defendant Darnell Peppers's motion to dismiss the indictment. (Doc. No. 13). The government filed a brief in opposition. (Doc. No. 14). After the Sixth Circuit Court of Appeals issued *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), while this motion was pending, I offered the parties the opportunity to supplement their briefing in light of that decision. (*See* non-document entry dated September 16, 2024). They did not. For the reasons that follow, I deny Peppers's motion.

## II. BACKGROUND

According to the indictment, Peppers was convicted of a misdemeanor crime of domestic violence on May 31, 2018, in the Lucas County, Ohio Court of Common Pleas. (Doc. No. 1 at 1). On January 2, 2024, Peppers allegedly possessed a Palmetto State Armory 9mm semiautomatic pistol, knowing he had previously been convicted of the misdemeanor domestic violence offense. (*Id.*). The government charged Peppers with violations of 18 U.S.C. §§ 922(g)(9) and 924(a)(8). (*Id.*).

After the parties finished their briefing on this motion, the Sixth Circuit decided *Williams*, which is new "binding precedent" that "controls" a Second Amendment challenge to a different provision of the same statute, 18 U.S.C. § 922(g)(1). *United States v. Parham*, 119 F.4th 488, 490, 495 n.4 (6th Cir. 2024). At an October 6, 2024 status conference, Peppers indicated he wanted to file a supplemental motion in light of *Williams*, with responsive briefing by the government to follow. (*See* non-document entry dated October 6, 2024). Four days later, on October 10, 2024, the Sixth Circuit decided *United States v. Gailes*, 118 F.4th 822 (6th Cir. 2024), which held that 18 U.S.C. § 922(g)(9) is facially constitutional under the Second Amendment. *Gailes*, 118 F.4th at 830. Peppers requested more time to file his supplemental briefing, and I granted that motion. (*See* non-document order dated November 15, 2024). At that time, I also extended my previous exclusion of time under the Speedy Trial Act until December 13, 2024, the updated briefing deadline. (*See* non-document Order to Continue dated November 15, 2024). On November 22, 2024, counsel for Peppers informed me, via email to my chambers, that he would not be filing a supplemental motion. I took his motion to dismiss under advisement at that time.

### III.    ANALYSIS

Peppers brings both facial and as-applied challenges to his prosecution under § 922(g)(9). (*See* Doc. No. 13 at 2-4 and 6). *Gailes* squarely held that "18 U.S.C. § 922(g)(9) is facially constitutional, 'consistent with the Second Amendment.'" 118 F.4th at 830 (quoting *United States v. Rahimi*, 144 S.Ct. 1889, 1896 (2024)). So, I reject Peppers's facial challenge.

*Gailes* did not address an as-applied challenge to § 922(g)(9). *See* 118 F.4th at 824. But *Williams* addressed an as-applied challenge to subsection (g)(1), a sister provision to 18 U.S.C. § 922(g)(9). *See Williams*, 113 F.4th at 657-62. Applying the history-and-tradition framework outlined in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024), *Williams* extracted "[t]he relevant principle from our tradition of firearms

2

regulation" to determine the constitutionality of § 922(g)(1). *Williams*, 113 F.4th at 661. Because *Gailes* relied on the same core reasoning *Williams* employed, and because §§ 922(g)(1) and (g)(9) are materially similar in relevant respects, I conclude *Williams*'s framework for addressing Second Amendment-based as-applied challenges to § 922(g)(1) is applicable to Second Amendment-based as-applied challenges to § 922(g)(9).

*Williams* analyzed English and early American firearms laws, with a particular focus on the surety and going-armed laws in existence around the time of the Founding, and concluded that "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous." *Id.* at 657. This is because "governments in England and colonial America long disarmed groups that they deemed to be dangerous." *Id.* These groups "posed a fundamental threat to peace" and, therefore, "had to be kept away from arms." *Id.* These governments accomplished this goal, "for centuries," by "label[ing] whole classes as presumptively dangerous." *Id.* Section 922(g)(1) passed constitutional muster because it was "an attempt to do just that." *Id.*

But *Williams* also held that "when the legislature disarms on a class-wide basis, individuals must have a reasonable opportunity to prove that they don't fit the class-wide generalization" of dangerousness. 113 F.4th at 663. *Williams* shaped its doctrine governing as-applied challenges to fit Founding-era firearms regulation practices: "several historical examples authorized the official doing the disarming, usually the local justice of the peace, to make the dangerousness determination. . . . District judges serve the same function when they entertain as-applied challenges to § 922(g)(1)." *Williams*, 113 F.4th 657.

Functionally speaking, this requirement creates a burden-shifting regime. So long as an indicted individual's "record" contains a qualifying prerequisite offense, "the burden rests on [the defendant] to show he's not dangerous." *Id.* at 662. Accordingly, *Williams* required a court entertaining an as-applied challenge to a prosecution under § 922(g)(1) to permit the defendant to

3

offer evidence of their "specific characteristics," based on their "entire criminal record," to disprove their presumed dangerousness. *Id.* at 657.

*Gailes* built on *Williams*. It reasoned that "[t]he historical sources cited in *Rahimi* and *Williams* establish the constitutionality of modern firearms regulations targeting those who 'pose[ ] a clear threat of physical violence to another.'" *Gailes*, 118 F.4th at 828 (citing *Rahimi*, 144 S. Ct. at 1901 and *Williams*, 113 F.4th at 657). *Gailes* grouped individuals convicted of § 922(g)(9) predicate offenses into this class because "[d]omestic-violence convictions generally involve some sort of physical force." *Id.* at 827. Then, focusing on the "general, historical analogues" on which the *Williams* court relied to uphold the "categorical[]" disarmament of felons, *Gailes* likewise upheld § 922(g)(9), which "categorically disarms individuals with valid, domestic-violence convictions." *Gailes*, 118 F.4th at 828.

These core similarities make *Williams*'s approach to evaluating as-applied challenges a natural fit for as-applied challenges to § 922(g)(9). Like § 922(g)(1), § 922(g)(9) "categorically disarms individuals," and the same "historical sources" relevantly analogous to § 922(g)(1) render § 922(g)(9) facially constitutional under the Second Amendment as well. *Gailes*, 118 F.4th at 828. Section 922(g)(9) and § 922(g)(1) both prohibit firearm possession on the basis of a prior conviction. *Compare* 18 U.S.C. § 922(g)(1) (banning firearm possession by a person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year") *with* 18 U.S.C. § 922(g)(9) (banning firearm possession by a person "who has been convicted in any court of a misdemeanor crime of domestic violence").

Further, as the Supreme Court has explained: "Congress enacted § 922(g)(9) . . . to close [a] dangerous loophole in the gun control laws: While felons had long been barred from possessing guns" under § 922(g)(1), "many perpetrators of domestic violence are convicted only of misdemeanors." *United States v. Castleman*, 572 U.S. 157, 160 (2014) (internal citations and quotations

4

marks omitted). Just as § 922(g)(1) imposes a "class-wide presumption" of dangerousness on individuals with a prior felony conviction, so too does § 922(g)(9) represent such a legislative judgment about individuals with prior convictions for misdemeanor domestic violence offenses. *Williams*, 113 F.4th at 657; *see also Castleman*, 573 U.S. at 167 ("we see no anomaly in grouping domestic abusers convicted of generic assault or battery offenses together with the others whom § 922(g) disqualifies from gun ownership").

Adopting *Williams*'s as-applied approach for § 922(g)(9) also promotes the predictability and uniform application of this rapidly-evolving area of the law. Courts within the Sixth Circuit have already begun to conduct constitutional "dangerousness" evaluations for defendants charged under § 922(g)(1), probing a defendant's criminal history and other specific characteristic using the criteria laid out in *Williams*. *See, e.g., United States v Goins*, 118 F.4th 794, 804-05 (6th Cir. 2024); *United States v. Sutton*, No. 2:23-cr-241, 2024 WL 4817441 at *6-8 (S.D. Ohio Nov. 18, 2024); *United States v. Norris*, No. 3:23-cr-572, 2024 WL 4816246 at *1-7 (N.D. Ohio Nov. 18, 2024); *United States v. Bell*, No. 2:20-cr-20336, 2024 WL 4589812 at *4-5 (E.D. Mich. Oct. 28, 2024); *United States v. Pickett*, No. 3:22-cr-00014-2, 2024 WL 4854738 at *2-5 (M.D. Tenn. Nov. 21, 2024); *United States v. Keller*, No.: 3:24-CR-5-TAV-DCP-1, 2024 WL 4800188 at *7-8 (E.D. Tenn. Nov. 15, 2024); *United States v. Harris*, 2024 WL 4810389 at 4-5 (E.D. Ky. Oct. 9, 2024). Moreover, at least one other district court has already applied *Williams*'s burden-shifting dangerousness analysis to § 922(g)(9). *See Pickett*, 2024 WL 4854738 at *5. Using this test for as-applied challenges to § 922(g)(9) ensures the primacy of "[t]he relevant principle from our tradition of firearms regulation" inductively analyzed in *Williams*. 113 F.4th at 661.

Under this framework, Peppers's as-applied challenge fails. His indictment alleges he was convicted of two prior domestic violence misdemeanor offenses in 2018. (Doc. No. 1 at 1); *see State of Ohio v. Darnell Peppers*, No. G-4801-CR-0201801767 (Lucas Cnty. C.P.) & *State of Ohio v. Darnell*

5

*Peppers*, G-4801-CR-0201801766 (Lucas Cnty. C.P.).  The publicly available dockets and records for these criminal cases do not reveal much about the specific acts underlying the charged offenses.  But they do show that on May 31, 2018, Peppers pled no contest to two violations of Ohio Revised Code § 2919.25(A) and (D)(2) and was sentenced to two suspended 180-day consecutive terms of incarceration, one for each offense.  *See State of Ohio v. Darnell Peppers*, non-document entry, No. G-4801-CR-0201801767 (Lucas Cnty. C.P. May 31, 2018) & *State of Ohio v. Darnell Peppers*, non-document entry, G-4801-CR-0201801766 (Lucas Cnty. C.P. May 31, 2018).

Section 922(g)(9) prohibits the possession of a firearm by a person "who has been convicted in any court of a misdemeanor crime of domestic violence." 18 U.S.C. § 922(g)(9).  A "misdemeanor crime of domestic violence" includes an offense that is a misdemeanor under state law and:

> has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, by a person similarly situated to a spouse, parent, or guardian of the victim, or by a person who has a current or recent former dating relationship with the victim.

18 U.S.C. § 921(a)(33)(A).

Section 2919.25(A) provides: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Ohio Rev. C. § 2919.25(A).  A violation of this provision is a first-degree misdemeanor in Ohio.  *Id.* § 2919.25(D)(2).  "Physical harm" under Ohio law means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." Ohio Rev. C. § 2901.01(A)(3).  "Family or household member" means "[t]he natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent" or a person presently or previously residing with the offender who is a "spouse, a person living as a spouse, or a former spouse of the offender;" a "parent, a foster parent, or a child of the offender, or another

person related by consanguinity or affinity to the offender;" or a "parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender." Ohio Rev. C. § 2919.25(F)(1).

Peppers does not argue his two prior convictions for violations of this statute cannot be "misdemeanor crime[s] of domestic violence" under § 922(g)(9). (*See* Doc. No. 13). The Sixth Circuit has already explained that "physical harm," as used in section 2919.25(A), "is (to some extent, by definition) force 'capable of causing physical injury or pain to another person.'" *United States v. Gatson*, 776 F.3d 405, 411 (6th Cir. 2015) (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)). The Supreme Court explained in *Castleman* that "[i]t is impossible to cause bodily injury without applying force" as the term "force" is used in the statutory definition of "misdemeanor crime of domestic violence." 572 U.S. at 170. Also in *Castleman*, the Supreme Court held that "the knowing or intentional application of force is a 'use' of force" under 18 U.S.C. § 921(a)(33)(A). *Id.* Because § 2919.25(A) criminalizes the knowing or intentional causation of physical harm, it "has, as an element, the use or attempted use of physical force." 18 U.S.C. § 921(a)(33)(A).

Section 2919.25(A) also fits the victim requirement of the definition of "misdemeanor domestic violence." Section 2919.25's definition of "family or household member" includes a biological co-parent of an offender's child; a present or former spouse, or person living as a spouse, residing with the offender; the parent or child of an offender's spouse, residing with the offender; or another person related to an offender's spouse, residing with the offender. *See* Ohio Rev. C. § 2919.25(F)(1).

Likewise, § 921(a)(33)(A)'s definition of "misdemeanor crime of domestic violence" includes offenses against an offender's parent, child, or biological co-parent; a person who has a "current or former dating relationship" with an offender; or a person residing with the offender who is a parent,

7

spouse, or is similarly situated to a parent or spouse of the offender. *See* 18 U.S.C. § 921(a)(33)(A). Based on the record before me, and absent any argument to the contrary from Peppers, I conclude Peppers's prior convictions under § 2919.25(A) qualify as misdemeanor crimes of domestic violence under 18 U.S.C. § 922(g)(9). *See United States v. Wheeler*, No. 2:23-cr-0066, 2024 WL 1579915 at *2 (S.D. Ohio April 11, 2024) (concluding that § 2919.25(A) "is a categorical match with § 922(g)(9)").

As I explained above, it is Peppers's burden to show that the "class-wide presumption" of dangerousness, which attaches by virtue of his prior domestic violence convictions under § 2919.25(A), "doesn't apply" to him. *Williams*, 113 F.4th at 657; *see Gailes*, 118 F.4th at 828. He has not attempted to make such a showing, so his as-applied challenge cannot succeed. (*See* Doc. No. 13).

Moreover, *Williams*'s focus on offenses involving violence or the risk of violence—and its contradistinction of crimes that "cause no physical harm to another person or the community"— indicates that dangerous offenses are those which cause or risk physical harm to the body of another person. *Williams*, 113 F.4th at 659; *see also United States v. Hines*, No. 3:22-cr-157, 2024 WL 425256 at *3 (N.D. Ohio Sept. 12, 2024) ("the gravamen of *Williams*'s analysis is physical harm"). So, Peppers's prior misdemeanor domestic violence convictions indicate he is dangerous in the manner described in *Williams* because the statute under which he was convicted requires the offender to have caused or attempted to cause "physical harm." Ohio Rev. C. § 2919.25(A); *see Williams*, 113 F.4th at 658 ("certain categories of past convictions are highly probative of dangerousness").

For these reasons, I conclude that Peppers has failed to carry his "burden" to show, based on his specific characteristics, that the Second Amendment protects him from prosecution under § 922(g)(9). *Williams*, 113 F.4th at 662.

## IV. CONCLUSION

For the reasons stated above, I deny Peppers's motion to dismiss. (Doc. No. 13).

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge